# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18CR00269 ERW/NCC |
| EDWARD MCGINNIST, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Memorandum, Report and Recommendation of United States Magistrate Judge Noelle C. Collins [ECF No. 132], pursuant to 28 U.S.C. § 636(b)(1), recommending Defendant Edward McGinnist's Motion to Suppress Evidence [ECF No. 32] and sealed Motion to Suppress Evidence [ECF No. 78] be denied, and recommending Defendant's Motion to Compel Disclosure of *Brady* Information filed under seal [ECF No. 45] be granted in part and denied in part. Defendant filed Objections to the Report and Recommendation under seal [ECF No. 143]. The government filed a sealed Response in Opposition to Defendant's Objections [ECF No. 149].

**I.    LEGAL STANDARD**

When a party objects to a Report and Recommendation, the Court conducts a *de novo* review of those portions of a report or specified proposed findings to which timely objection is made. 28 U.S.C. § 636(b); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003).

**II.   DISCUSSION**

The second superseding indictment alleges on or about August 9, 2017, Edward

McGinnist ("Defendant") knowingly possessed ammunition, knowing he had previously been convicted of one or more crimes (Count 1); knowingly and intentionally possessed with intent to distribute methamphetamine (Count 2) and heroin (Count 3); knowingly possessed a firearm in furtherance of a drug trafficking crime (Count 4); and knowingly possessed one or more firearms, knowing he had previously been convicted of one or more crimes (Count 5). Defendant objects to Magistrate Judge Collins' denial of the motions to suppress on the basis that the officers lacked reasonable suspicion to stop Defendant, and the seizure of the backpack was not justified.  ECF No. 143 pp. 14-24.  Defendant also objects to Magistrate Judge Collins' reliance on the credibility of the former officers without compelling the production of their disciplinary records and without considering this evidence in assessing their credibility.  *Id.* At pp. 1-14.  The Court has reviewed the motions, and the testimony, evidence, and arguments from the evidentiary hearing.  Based on this review, the Court concludes the magistrate judge made proper findings and correctly analyzed the issues. The facts of this case, relevant to the motions to suppress, are as follows:

On August 9, 2017, St. Louis Metropolitan Police Officers Joseph Scalzo ("Officer Scalzo") and Lori Wozniak ("Officer Wozniak") were riding in a marked patrol car.[1]  The uniformed officers were assigned to a unit designed to address community issues in South St. Louis City, the First District in particular.  Officers Scalzo and Wozniak focused on disrupting nuisance crimes in South City.  On August 9, 2017, the officers conducted mobile surveillance around St. Louis Square Park which shares a parking lot with the South Public Supermarket. Based on community reports, officers knew the park was a consistent source of street-level

---

[1] While Scalzo and Wozniak are no longer employed as police officers, the Court will refer to them as officers for constancy.

2

nuisance crimes such as prostitution and drug use and sales.

As the officers drove toward the part, Officer Scalzo saw a silver Dodge Neon sedan backed into a parking space in the supermarket parking lot. Officer Scalzo noticed three to four people standing in line on the passenger side of the Dodge Neon in what looked like the makings of a "textbook open-air drug sale" as he had observed numerous times in his work. Officers Scalzo and Wozniak had also seen drug dealers park cars like the Dodge Neon to better flee law enforcement. Officer Scalzo observed the Dodge Neon for about 20 to 30 seconds before arriving in the parking lot. He did not see a hand-to-hand sale, but the officers discussed their observations of the suspicious scene and decided to investigate.

At approximately 10:36 a.m., Officer Wozniak stopped and parked the patrol car at the front edge of the Dodge Neon, with the front of the suspect car behind the rear bumper of the patrol car. Officer Scalzo believed the two men and one woman abused controlled substances because they appeared nervous, undernourished, and unhealthy. Officer Wozniak also recognized the pedestrians. Officer Wozniak exited the patrol car first and approached the female driver of the Dodge Neon with a wave and a greeting. Officer Scalzo also exited, first talking to the pedestrians and then approaching the front passenger side where Defendant was sitting. Officer Wozniak asked both occupants to provide identification. Defendant produced ID for Officer Scalzo, and Ashely Allnutt ("Ms. Allnutt"), the driver, gave her ID to Officer Wozniak, who smelled the odor of marijuana. Defendant then moved his left hand down toward his legs and into an open backpack on the floorboard. Officer Scalzo feared the backpack could contain a handgun. Officer Scalzo directed Defendant at least four or five times to remove his hand from the backpack and show his hands.

During the 20 to 30 seconds of Officer Scalzo's encounter with Defendant, Officer

Wozniak directed Ms. Allnutt to turn off the vehicle, which she refused to do.  Instead, Ms. Allnutt shifted the car into drive and made an exaggerated movement with the steering wheel, turning the car's wheels to the left.  Officer Scalzo then reached into the car and grabbed the backpack in an effort to remove it from Defendant's reach.  Defendant grabbed the straps, and Ms. Allnutt also grabbed the backpack.  Despite orders from Officer Wozniak to put the car in park and turn off the engine, Ms. Allnutt drove away.  Defendant lost his grasp of the backpack, leaving the backpack with Officer Scalzo.  As the vehicle sped out of sight, Officer Scalzo used the police radio to contact dispatch with a description of the vehicle and its occupants.  Officer Scalzo then looked into the partially unzipped school backpack and saw it contained a large gallon bag of suspected marijuana, which Officer Scalzo recognized from the look and the smell.  The backpack did not contain a gun.

The incident was captured by video recordings from external surveillance cameras operated by the supermarket.[2]   The recordings portrayed two angles and were offered as evidence by both the government and Defendant, and the magistrate judge found the video depictions are generally consistent with the testimonies of Officers Scalzo and Wozniak and Ms. Allnutt.  The videos show the occupants driving away, then Officer Scalzo holding the backpack, unzipping the main compartment, and removing items. The video did not clearly indicate whether the backpack was partially unzipped.

Ms. Allnutt testified at the first evidentiary hearing.  At the supplemental evidentiary hearing, Robert Thies, a defensive investigator with the Federal Public Defender's Office, and

---

[2] The Court has viewed the exhibit video surveillance footage from both Channels 4 and 16. ECF No. 55.

Officer Wozniak[3] testified for the defense.

### A. Motions to Suppress Evidence Recovered from the Backpack

Defendant first objects to Magistrate Judge Collins' Report and Recommendation on the basis that the officers lacked reasonable suspicion to stop Defendant, and the search and seizure of the backpack was unlawful. Defendant contends a reasonable person would not have felt free to go from the time Officer Scalzo opened his car door, and the officers' minimal observation and information did not constitute adequate reasonable suspicion to stop Defendant and search and seize the backpack.

"Not all encounters between law enforcement and citizens implicate the Fourth Amendment." *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012). Instead, the Fourth Amendment prohibits only unreasonable "seizures." *Id.* A seizure occurs "'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *INS v. Delgado,* 466 U.S. 210, 215 (1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554(1980)). Under this standard, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick,* 501 U.S. 429, 434 (1991); *see also Florida v. Royer*, 460 U.S. 491, 502 (1983) (plurality opinion). Only where an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen" may the court conclude a seizure has occurred. *Bostick*, 501 U.S. at 434 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). "Determining which

---

[3] Officer Wozniak was a SLMPD police officer from July 27, 1998 until October 31, 2018. After the occurrence of the aforementioned events in this case, Officer Wozniak was charged with two misdemeanor counts of fourth-degree assault for alleged retaliation against 2 arrestees in the back of her police van on August 2, 2018 by slamming the breaks so the suspects would smack their heads against the vehicle. *See State v. Lori Wozniak*, Cause No. 1822-CR03556, Twenty Second Judicial Circuit, City of St. Louis, Missouri.

5

police-citizen contacts fall within the protections of the Fourth Amendment and which do not is fact intensive and turns on the unique facts of each case." *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008).

Defendant argues the magistrate judge erred in finding he was not stopped by the police within the meaning of the Fourth Amendment until Officer Wozniak told Allnutt to turn off her vehicle. Instead, Defendant asserts Officer Scalzo's conduct near the Dodge Neon's passenger door where Defendant was seated indicated to a reasonable person that he or she was not free to go. Defendant contends Officer Scalzo's stopping the police cruiser by the passenger side of the Neon and announcing "we [are] going to have a talk," constituted an official display that Scalzo "expected compliance from everyone within his earshot." ECF No. 143 p. 16.

However, the evidence in the record shows Officers Scalzo and Wozniak parked the patrol car past the Dodge Neon. When the officers exited the vehicle, Officer Wozniak greeted Allnutt and waved, walked to the driver's side of the car, and calmly questioned Allnutt. Officer Scalzo introduced himself and talked to the small group of people on the lot. At this point, the stop was merely a consensual encounter and did not trigger Fourth Amendment scrutiny. *Grant*, 696 F.3d at 784; *see also Bostick*, 501 U.S. at 434 (finding no seizure occurs when police ask questions, ask to examine identification, or request consent to search luggage so long as the police officers do not convey a message that compliance is required); *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984) (per curium) (finding initial contact with defendant where officers simply asked if he would step aside and talk "was clearly the sort of consensual encounter that implicates no Fourth Amendment interest").

However, when Officer Wozniak asked Ms. Allnutt to turn of the vehicle, both officers asserted their authority over the occupants, and the consensual encounter became a *Terry* stop.

6

The Court finds the evidence of record demonstrates the *Terry* stop was valid under the totality of the circumstances.  Community reports indicated reports of nuisance crimes in and around the park.  The officers noticed the vehicle backed into the parking spot with individuals standing nearby, a scene which the officers recognized as a possible drug deal based on their experience and knowledge.  Officer Wozniak recognized the pedestrians, and she smelled the odor of marijuana coming from the vehicle.  The officers and Ms. Allnutt testified Defendant's hand was in the backpack.  Defendant refused to show his hands despite repeated requests by Officer Scalzo asking Defendant to remove his hand from the backpack.  Magistrate Judge Collins found, given the totality of the circumstances, the officers had a reasonable suspicion to detain Defendant.  The Court's *de novo* review of the evidentiary hearing leads it to the same conclusion.  *See United States v. Hurd*, 785 F.3d 311, 314-15 (8th Cir. 2015) (concluding the totality of the circumstances created a reasonable suspicion justifying a *Terry* stop based on the location of a parked car with an individual standing next to the window in a higher crime area known for drug transaction and the experience of the police officer).

      Moreover, the Court finds Officer Scalzo was justified in seizing the backpack during the *Terry* stop because Defendant was unsecured at the time, and Officer Scalzo had a reasonable belief a weapon could be in the backpack.  Officers are authorized to take steps that are reasonably necessary to protect the officers' personal safety and maintain the status quo in the course of a *Terry* stop.  *See United States v. Hensley*, 469 U.S. 221, 235 (1985).

      Likewise, the search of the backpack was justified as an inventory search.  "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the [Supreme] Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine

its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983). Inventory searches are one such exception. *United States v. Smith,* 715 F.3d 1110, 1117 (8th Cir. 2013). The purpose of an inventory search is to protect the owner's property and to protect the police from potential danger. *Id.* (citation omitted). The search must be reasonable under the totality of the circumstances, which requirement is met where the inventory search is conducted according to standard police procedures and not as a means to discovery incriminating evidence. *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (citations omitted). Magistrate Judge Collins found, based on Ms. Allnutt abandoning the scene and the fact the officers could not leave the backpack unattended, the inventory search of the contents was reasonable. Further, Judge Collins determined whether the backpack was fully zipped or partially unzipped has no impact on the reasonableness of the inventory search. After *de novo* review of the record, the Court agrees the search and seizure were lawful, and the Court will deny Defendant's motions to suppress the evidence seized from the backpack.

  **B.**  **Motion to Compel *Brady* Evidence**

Defendant also objects to Magistrate Judge Collins' reliance on the credibility of the two former officers without compelling the government's production of *Brady, Giglio,* and *Kyles* information of their disciplinary records and considering those records when assessing their credibility.[4] Judge Collins recommends, to the extent Defendant requests disclosure of favorable evidence or information to impeach government witnesses who will testify at trial, the motion to compel should be granted in its entirety. However, because Officer Wozniak is not a witness for

---

[4] The government has stated it does not intend to call Ms. Wozniak as a witness at Defendant's trial due to her name being on a list published by the St. Louis Circuit Attorney's Office of officers deemed not credible as a primary witness to a state prosecution.

8

the prosecution in this case, Defendant is not entitled to information or records maintained by the City of St. Louis pertaining to Officer Wozniak.

The government, generally, is constitutionally required to disclose evidence that is both favorable to an accused and material either to guilt or punishment, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The government is also required to disclose evidence that that may affect the credibility of government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). However, the government is not required by the Constitution to make all the evidence in its file available to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "To succeed on a *Brady* claim, '[defendant] must show that the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment.'" *United States v. Whitehead*, 176 F.3d 1030, 1036 (quoting *United States v. Flores-Mireles*, 112 F.3d 337, 339-40 (8th Cir. 1997)). Evidence is material only if a reasonable probability exists that, had the prosecution disclosed the evidence to the defense, the outcome of the proceeding would have been different. *Id.*

Here, the government states it is not in possession of any exculpatory or impeachment evidence pertaining to Officers Scalzo or Wozniak. However, the Court agrees with the magistrate judge that Defendant is entitled to material or information, to the extent it exists, pertaining to any person the government calls as a witness at trial including (1) the prior criminal history or convictions of a witness; (2) any consideration offered in exchange for his/her testimony and/or cooperation in investigating the case; and (3) Jencks Act Material.

The Court also finds Defendant is not entitled to information under *Brady* or *Giglio*

9

regarding Officer Wozniak, as she is not a witness for the prosecution.[5]  Defendant has not cited any controlling precedent in support of the proposition that the government is obligated under *Brady* to disclose impeachment evidence with respect to a defense witness.  Instead, the government is only obligated to disclose impeachment information relating to a government witness.  *See United States v. Green,* 178 F.3d 1099, 1109 (10th Cir. 1999); *see also United States v. Townsend*, No. 13-CR-6068, 2014 WL 2115248, at *4 (E.D. Wash. May 21, 2014) (stating the government is not obligated to examine personnel files of law enforcement officers it does not intend to call as witnesses).  Thus, the Court finds the government may not be compelled under *Brady* or *Giglio* to produce impeachment material for defense witness Officer Wozniak.  The Court will deny Defendant's motion to compel with respect to Officer Wozniak but will grant the motion with respect to evidence pertaining to any person the government calls as a witness as set forth above.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [ECF No. 132] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Motions to Suppress Evidence [ECF Nos. 32, 78] are **DENIED**.

---

[5] The Court also finds no merit to Defendant's argument that the government made Officer Wozniak a witness for the prosecution during cross-examination in the hearing on Defendant's motion to suppress.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Disclosure of *Brady* Information, filed under seal [ECF No. 45], is **GRANTED in part** and **DENIED in part.**

So Ordered this 20th day of April, 2020.

*E. Richard Webber*

---
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE